STATE OF NEBRASKA, APPELLEE, V.
BRUCE CANADY, APPELLANT.
641 N.W.2d 43

Filed March 29, 2002.   No. S-00-1250.

Dennis R. Keefe, Lancaster County Public Defender, and Scott P. Helvie for appellant.

Don Stenberg, Attorney General, Scott G. Gunem, and J. Kirk Brown for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Bruce Canady was charged with and convicted of felony child abuse. He was sentenced to 10 to 20 years in prison with credit for 255 days served. Canady appeals the judgment of conviction and sentence.

## SCOPE OF REVIEW

In reviewing a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or reweigh the evidence. Such matters are for the finder of fact, and the verdict of the jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998), *cert. denied* 525 U.S. 895, 119 S. Ct. 219, 142 L. Ed. 2d 180.

## FACTS

On May 12, 2000, Canady was charged by information with child abuse, in violation of Neb. Rev. Stat. § 28-707 (Cum. Supp. 2000). The information alleged that Canady had knowingly and intentionally caused his daughter, Tiffany Canady, born November 30, 1996, to be placed in a situation that endangered her life or physical or mental health and knowingly or intentionally caused her serious bodily injury.

Prior to trial, Canady sought by a motion in limine to preclude the State from introducing the testimony of Dr. David Voigt regarding his opinion as to how Tiffany had sustained burns and whether the burns were the result of forceful immersion in water.

Canady alleged Voigt was not qualified as an expert in juvenile immersion burns and was not a forensic expert, which would qualify him to testify as an expert regarding the source of the burns. In a second motion in limine, Canady sought to exclude photographs of Tiffany following treatment. He alleged that the photographs did not accurately reflect any injury and were therefore prejudicial. Canady also moved to dismiss based on comments made by the State in a separate juvenile court proceeding. The district court overruled the motion to dismiss, and the evidence was admitted.

At trial, Staci Douglass testified that Canady had moved in with her and her three young children in November 1999. In March 2000, Tiffany had been living with Canady and Douglass for about 3 weeks. During that period, Canady and Douglass were trying to toilet train Tiffany.

On the morning of March 5, 2000, Douglass and Canady argued about telephone numbers Douglass had found on her telephone's caller I.D. The argument lasted 15 to 30 minutes. Douglass then went outside to clean out her car. All four children were playing outside, and Canady remained inside. During the morning, Douglass made several trips inside, and she and Canady continued to argue about the telephone numbers. Canady later came outside to call the children in for lunch, but only Tiffany went in.

When Douglass went inside, she heard Tiffany screaming and knew something was wrong. She went to the bathroom and saw Tiffany sitting in the bathtub with the water running. As she entered the bathroom, Tiffany stood up in the bathtub and reached out to Douglass. Canady, who was behind Douglass, told Tiffany, " 'Sit your butt back down.' " Tiffany was screaming that the water was hot. Canady then yelled a profanity at Douglass and told her to get out of the bathroom. He said, " 'This is my daughter, I'm handling this.' " Douglass said that when she entered the bathroom, she had slipped on Tiffany's soiled underwear.

At some point, Douglass felt the water, which was hot, and reached to turn on the cold water, but it was already running. She tried to "swish" the water to make it cool by Tiffany's legs and then noticed that Tiffany's legs were red. Douglass, who is a licensed practical nurse, told Canady to get Tiffany out of the

bathtub and that she was going to a drugstore to get something to treat Tiffany's legs. She did not take Tiffany out of the bathtub because she was scared and confused. By the time Douglass left for the drugstore, Canady had taken Tiffany out of the bathtub.

Douglass purchased a cream for burns because she was concerned about Tiffany. When Douglass returned, Tiffany was on the bed on her hands and knees. Her skin was red, and some of it had peeled off. Douglass said she dropped the sack containing the medicine; exclaimed, " 'Oh, my god' "; and told Canady that they needed to take Tiffany to the hospital. Canady dressed Tiffany in a pajama gown, and they drove to St. Elizabeth's Hospital.

Douglass testified that the faucet in the bathtub had a constant trickle of hot water and that when the faucet was turned on full force, the cold water did not come out with as much pressure as the hot water. She had called the landlord to complain because the water temperature was erratic. She did not see Canady physically restrain Tiffany in the bathtub, nor did he physically restrain Douglass from taking Tiffany out of the bathtub.

Investigator Cindi Arthur of the Lincoln Police Department testified that on the afternoon of March 5, 2000, she tested the water temperature in the home by using a candy thermometer purchased at a grocery store. Arthur first tested the temperature of the trickle of water from the bathtub faucet when both the hot and cold water were turned off. After she held the thermometer under the trickle for 3 minutes, the thermometer read 105 degrees Fahrenheit. The defense objected, arguing that the test was not reliable, had no probative value, and was speculative. The objection was overruled, and Arthur continued to testify. Running only the hot water, she filled the bathtub with 6½ inches of water. She placed the thermometer about 2 inches into the water for 3 minutes and measured the temperature at 112 degrees. She removed the thermometer and let it cool to below 100 degrees. She then put the thermometer on the bottom of the bathtub for 3 minutes. The thermometer measured 112 degrees. She let the thermometer cool and then held it under the running water, and it measured 120 degrees. Next, she held the thermometer under the cold running water, and it stayed below the 100-degree mark, which was the lowest measurement on the thermometer. She used 3 minutes as a measurement because she "figured that was a sufficient amount of time to

level out." She did not notice a significant difference in water pressure between the hot and cold water in the faucet.

Voigt, who treated Tiffany at the hospital on March 5, 2000, testified that he had treated more than 1,500 burn inpatients and that burns make up about 70 percent of his practice. When she was admitted, Tiffany had burns on her buttocks, perineum, and feet. Her injuries were consistent with an immersion scald, marked by a straight line called a tidemark.

The defense renewed its pretrial objection and conducted a foundational voir dire of Voigt in the presence of the jury. Voigt stated that he had treated approximately 300 scald burns and that approximately 40 of those had been in Nebraska. He has treated about 12 immersion scalds of juveniles while in Nebraska. Less than 1 percent of the time during his medical training was spent trying to determine the cause of a burn because that was not an objective of his treatment. The district court ruled that Voigt's testimony as to causation would be admitted and that he was qualified to testify.

Voigt stated that the tidemark on Tiffany's body indicated the level that the water had reached. He noted that 23 percent of Tiffany's body surface was burned and that about one-third of Tiffany's burns were full thickness burns, which require skin grafts. Tiffany underwent four operations which required anesthesia.

Voigt testified that when Tiffany was released from the hospital, she was stable, was eating a regular diet, and had begun walking without assistance from the physical therapist. In his opinion, to a reasonable degree of medical certainty, Tiffany's injuries were caused when she was placed in a hot liquid and held there for a period of time long enough to sustain a full thickness injury. Canady objected when Voigt was asked whether Tiffany could have sustained the injuries without being held in the water by someone. The objection was overruled, and Voigt stated that a neurologically intact child such as Tiffany would not voluntarily stand in a bathtub of hot liquid and then sit down. He could not determine the temperature of the water based on Tiffany's injuries.

Voigt stated it is generally recommended that a water heater be set at 120 degrees. An adult would have to be in 112-degree water

for about 10 hours to sustain a full thickness burn. Although he did not calculate the figure precisely, Voigt estimated that a child would need to be in 112-degree water for 3 hours to sustain a full thickness burn. In 120-degree water, a child could sustain a full thickness burn in a little more than 3 minutes. Voigt stated that Tiffany had a very low risk of dying from her burns but that she would suffer significant impairment, including pigment change, loss of sweat gland and oil function, mobility problems, and growth retardation in height and body stature.

Det. Sgt. Gregory Sorensen of the Lincoln Police Department testified that Canady told him that he was in the kitchen cooking when Tiffany soiled her underwear, so he took her into the bathroom. Canady turned on the hot and cold water in the bathtub, took off Tiffany's clothes, and put her in the bathtub. Canady then returned to the kitchen. When he heard Tiffany crying, he returned to the bathroom, where she said the water was too hot. He said he turned on more cold water and left the bathroom. When he heard Tiffany still crying, he returned to the bathroom at about the same time Douglass entered the bathroom. Douglass told him the water was too hot, and he removed Tiffany from the bathtub.

Canady was found guilty of felony child abuse and sentenced to a term of 10 to 20 years in prison. He appeals.

## ASSIGNMENTS OF ERROR

Canady assigns 15 errors, which we summarize as follows: Canady alleges that the district court erred (1) in overruling his motion to dismiss based on Neb. Rev. Stat. § 7-107 (Reissue 1997) because the Lancaster County Attorney's office stated in a separate juvenile court proceeding that his acts were unintentional; (2) in overruling his objections to the testimony of Arthur regarding tests of the water temperature because the testimony lacked foundation and was irrelevant and unreliable; (3) in overruling his objections to the testimony of Voigt as to causation because the testimony lacked proper and sufficient foundation; (4) in failing to sustain his objections to certain photographs that were irrelevant, cumulative, and unfairly prejudicial; (5) in overruling his motion to dismiss at the close of the State's evidence; (6) in overruling his motion for directed verdict at the close of

the evidence; (7) in failing to find that the evidence was insufficient and was contrary to law; and (8) in abusing its discretion in imposing an excessive sentence.

### ANALYSIS

Canady alleges several errors relating to the juvenile court proceedings that took place following this incident. The State filed a petition alleging that Tiffany was a child as defined by Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1998) in that she lacked proper parental care by reason of the faults or habits of Canady. In closing arguments at the formal hearing, counsel for the State said:

> And I want to be clear that it is not my position that he decided he was going to punish his daughter, put hot water in the tub and then put her in the tub. I don't — That's not the State's position as to what happened. What more likely than not happened is he became angry. He turned the water on. He didn't pay attention to how hot it was, put some bubbles in it, couldn't see steam, if there was any steam rising from it, put her in. She was crying. He was angry. He was yelling, and he just didn't pay enough attention to hear that she was saying, "It's too hot," and she needed to get out. And that was his responsibility as a parent.

The State's attorney continued:

> Now, again, I want to be clear. I do not think — and the State's position is not that Bruce Canady intentionally put his daughter in that hot water, but he was so angry that he was just not paying sufficient attention to what he did. He turned on that water.

Canady moved to dismiss the criminal charges based on § 7-107, arguing that the above statements during the juvenile court proceedings constituted a judicial admission that he did not intentionally place Tiffany in the water and did not intentionally harm her. He asserted that this judicial admission was binding on the State. He also argued that the criminal prosecution violated his due process rights and fundamental fairness in that the State was allowed to proceed on two different theories of liability. The district court overruled the motion to dismiss at the pretrial hearing and again when it was renewed at the close of the evidence.

On appeal, Canady claims that the district court erred in overruling the motion to dismiss because pursuant to § 7-107, the

prosecutor was bound by statements made in the juvenile court proceedings asserting that Canady's acts were unintentional. Section 7-107 states in relevant part:

> An attorney or counselor has power: . . . (2) to bind his client by his agreement in respect to any proceeding within the scope of his proper duties and powers; but no evidence of any such agreement is receivable except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court[.]

Canady argues that pursuant to § 7-107, the State was bound by the admission in the juvenile court proceedings that Canady acted unintentionally and that the criminal charges alleging that he acted intentionally should have been dismissed. He claims the parties "agreed" in the juvenile court proceedings that Canady had acted unintentionally. We disagree.

■■■ "[A] judicial admission, as a formal act done in the course of judicial proceedings, is a substitute for evidence and thereby waives and dispenses with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by an opponent is true." *Anderson v. Cumpston*, 258 Neb. 891, 897-98, 606 N.W.2d 817, 823 (2000). We do not adopt Canady's argument that the State's comments during closing arguments in a juvenile court proceeding bind the State to the same theory in a criminal proceeding. The State's burden of proof in a juvenile hearing to establish child abuse or child neglect is a preponderance of the evidence. *Benitez v. Rasmussen*, 261 Neb. 806, 626 N.W.2d 209 (2001), citing Neb. Rev. Stat. § 43-279.01(3) (Reissue 1998). The petition brought in juvenile court was "brought on behalf of the child, not to punish" Canady. See *In re Interest of Constance G.*, 247 Neb. 629, 635, 529 N.W.2d 534, 539 (1995). Comments made by counsel during closing arguments in the juvenile court proceeding did not bind the State as a judicial admission or bar it from pursuing criminal charges. The statements merely set forth the State's position as to the juvenile court proceedings.

Canady next argues that the district court erred in allowing Voigt to testify about the causation of Tiffany's injuries and that this testimony was not helpful to the jury. Canady filed a pretrial

motion in limine to preclude Voigt from testifying regarding causation of the burns. The court deferred ruling on the motion pending foundation. At trial, Canady objected when Voigt began to address the causation issue and the court granted Canady an opportunity to conduct a foundational voir dire in the presence of the jury. After excusing the jury, the court heard arguments and ruled that Voigt was qualified to offer an opinion as to the cause of the burns. The State then proceeded to examine Voigt, and the following colloquy took place:

Q[:] Doctor, based on your training and experience, do you have an opinion, to a reasonable degree of medical certainty, as to what was the cause of Tiffany Canady's burns?

A[:] I do.

Q[:] And what do you base that opinion on?

A[:] I base that opinion on the burn pattern that she has.

Q[:] Do you need any photographs to describe that?

A[:] I don't think so. I mean, we've kind of pointed it out all along. The tide marks; the nice, straight lines; the areas underneath the knees that are spared, and the fact that the toes were not burned.

Q[:] What is your opinion?

A[:] My opinion is that she was placed in a hot liquid and held there for a period of time, long enough to sustain a full thickness injury.

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. Neb. Rev. Stat. § 27-702 (Reissue 1995). Admissibility of expert testimony depends on whether specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. *McArthur v. Papio-Missouri River NRD*, 250 Neb. 96, 547 N.W.2d 716 (1996).

In determining whether an expert's testimony is admissible, the court must first determine whether the witness qualifies as an expert pursuant to § 27-702. See *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990), *disapproved on other grounds, State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991). Voigt, a medical doctor, had treated more than 1,500 burn inpatients,

approximately 300 scald burns, and 12 immersion scalds of juveniles and was qualified to testify as an expert.

The cause of Tiffany's burns was not in dispute. Voigt stated that the burns were caused when Tiffany was placed in a hot liquid and held there for a period of time long enough to sustain a full thickness injury.

Canady concedes that Voigt was qualified as a medical expert to testify about the injuries, but he asserts that Voigt did not have a sufficient basis for offering an opinion about the causation of the injuries because he had treated only 12 cases of immersion scalds of juveniles. This claim is without merit.

Next, Canady argues that because Voigt's testimony indicated that Canady intentionally caused the injury, the testimony should not have been admitted. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Neb. Rev. Stat. § 27-704 (Reissue 1995). Voigt's testimony as to the source of Tiffany's injuries was admissible. It was obvious to Douglass that Tiffany did not want to be in the hot water when she reached out to Douglass. The burn marks indicated that Tiffany tried to keep her body out of the water. Voigt's testimony was highly relevant to the determination of whether Canady knowingly or intentionally caused or permitted Tiffany to be placed in a situation that endangered her health. See § 28-707(1)(a). We conclude that the district court did not err in the admission of this evidence.

Canady also asserts as error that the testimony of Arthur lacked foundation and was irrelevant and unreliable. Although the State argues that the objections were not preserved for appellate review because Canady did not object to the testimony, we find that a sufficient objection was made when defense counsel approached the bench and stated that the tests were not reliable, lacked probative value, and were based on speculation. The district court overruled the objection. On appeal, Canady argues that the testimony was unreliable, irrelevant, and lacked foundation. We therefore proceed to examine the objection based on the reliability of the tests.

The thermometer used to measure the water temperature was a candy thermometer purchased at a grocery store. Arthur did not testify that the precision of the thermometer was evaluated

in any manner prior to its use to test the water temperature. Thus, the district court erred in allowing Arthur to testify as to the exact temperature of the water because there was no proof that the thermometer was accurate.

We have previously held that to sustain a conviction based on information derived from an electronic or mechanical measuring device, there must be reasonable proof that the measuring device was accurate and functioning properly. *State v. Chambers*, 233 Neb. 235, 444 N.W.2d 667 (1989). The erroneous admission of evidence in a criminal case is prejudicial error unless the State proves that the error was harmless. See *State v. Sheets*, 260 Neb. 325, 618 N.W.2d 117 (2000). In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *State v. Kula*, 260 Neb. 183, 616 N.W.2d 313 (2000). Harmless error review looks to the basis on which the jury actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. *State v. Trotter*, 262 Neb. 443, 632 N.W.2d 325 (2001).

In our consideration of whether the admission of Arthur's testimony was harmless error, we must also examine Voigt's testimony and other evidence that was presented at trial. In this examination, we are to keep in mind that the issue presented to the jury was whether Canady knowingly or intentionally caused or permitted Tiffany to be placed in a situation that endangered her health. See § 28-707(1)(a). Therefore, we consider whether the jury was materially influenced by Arthur's testimony in reaching its verdict that Canady acted knowingly or intentionally.

The evidence clearly established that Tiffany was placed in a hot liquid long enough to sustain a full thickness burn. Voigt testified that Tiffany's injuries were consistent with an immersion scald, marked by a straight line of burns called a tidemark, which indicated the level that the water had reached on Tiffany's body.

Voigt was asked whether Tiffany could have sustained the injuries without being held in the water by someone. He stated

that a neurologically intact child such as Tiffany would not voluntarily stand in a bathtub of hot liquid and then sit down. He testified concerning the amount of time required to cause full thickness burns in adults and children. He stated that Tiffany's burns could have occurred by immersion for a matter of seconds if the water was hot enough, or she could have been restrained for a longer period of time.

We conclude that Arthur's testimony about the tests made with the thermometer did not materially influence the jury to determine that Tiffany had knowingly been placed in a situation dangerous to her physical health. The admission of Arthur's testimony was error, but it was harmless. The evidence supports a finding that Tiffany did not voluntarily sit in the bathtub of hot water and that she attempted to get out of the bathtub but was not permitted by Canady to do so.

■ Canady next argues that photographs of Tiffany's burns were unfairly prejudicial. Canady's objections on the basis of cumulativeness and relevancy were overruled. The admission of photographs of a gruesome nature rests largely with the discretion of the trial court, which must determine their relevancy and weigh their probative value against their prejudicial effect. *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001). The district court did not receive every photograph offered by the State. It reviewed the photographs and admitted only some of them. The State charged Canady with child abuse as a Class III felony, which requires that the abuse result in serious bodily injury. See § 28-707. The photographs were necessary to demonstrate the serious nature of the injury to Tiffany, and this assignment of error is without merit.

■ Canady next asserts that the State failed to prove beyond a reasonable doubt that he acted intentionally and knowingly and that, therefore, the district court erred in not granting his motion to dismiss or his motion for directed verdict. In determining whether a criminal defendant's motion to dismiss for insufficient evidence should be sustained, the State is entitled to have all of its relevant evidence accepted as true, the benefit of every inference that can reasonably be drawn from the evidence, and every controverted fact resolved in its favor. *State v. Clark*, 255 Neb. 1006, 588 N.W.2d 184 (1999). In a criminal case, a court can direct a

verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Johnson*, 261 Neb. 1001, 627 N.W.2d 753 (2001). If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *State v. Spurgin*, 261 Neb. 427, 623 N.W.2d 644 (2001).

Accepting the State's relevant evidence as true and giving the State every reasonable inference, the motion to dismiss was properly overruled. See *State v. Clark, supra.* The evidence was sufficient to find beyond a reasonable doubt that Canady "knowingly, intentionally, or negligently cause[d] or permit[ted] a minor child to be: (a) Placed in a situation that endanger[ed] his or her life or physical or mental health." See § 28-707. The crime was charged as a Class III felony, which occurs "if the offense is committed knowingly and intentionally and results in serious bodily injury." See *id.* A serious bodily injury is one which involves a substantial risk of death or which involves substantial risk of serious permanent disfigurement or protracted loss or impairment of the function of any part or organ of the body. See Neb. Rev. Stat. § 28-109(20) (Reissue 1995).

Tiffany's injuries were consistent with an immersion scald and were caused when she was placed in hot water and held there for a period of time long enough to sustain a full thickness injury. A normal child would not have voluntarily remained in the hot water. The evidence established that Tiffany will suffer significant impairment, including pigment change, loss of sweat gland and oil function, mobility problems, and growth retardation in height and body stature.

Intent may be inferred from the words and acts of the accused and from the facts and circumstances surrounding the conduct. *State v. Ramsay*, 257 Neb. 430, 598 N.W.2d 51 (1999). The jury heard and observed the witnesses and the evidence. It is not this court's role to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or reweigh the evidence. We are bound to sustain the verdict of the jury if, taking the view most favorable to the

State, there is sufficient evidence to support it. See *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998), *cert. denied* 525 U.S. 895, 119 S. Ct. 219, 142 L. Ed. 2d 180. The evidence is sufficient, and the verdict must be upheld.

Finally, Canady complains that the district court abused its discretion in imposing an excessive sentence. Canady was convicted of a Class III felony, which is punishable by a sentence from 1 to 20 years in prison. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2000). Canady was sentenced to a term of 10 to 20 years in prison. Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Heitman*, 262 Neb. 185, 629 N.W.2d 542 (2001). Canady's sentence does not demonstrate that the court abused its discretion. This assignment of error is without merit.

### CONCLUSION

Finding no merit to any of Canady's assignments of error, we affirm the judgment of conviction and sentence of the district court.

AFFIRMED.