777 N.W.2d 337 (2010)
18 Neb. App. 241
STATE of Nebraska, appellee,
v.
Alfredo RAMIREZ, also known as Alfredo Strong, also known as Fast Freddy, appellant.
No. A-09-537.
Court of Appeals of Nebraska.
January 19, 2010.
*339 Gerard A. Piccolo, Hall County Public Defender, Grand Island, for appellant.
Jon Bruning, Attorney General, and George R. Love, Columbus, for appellee.
INBODY, Chief Judge, and IRWIN and CARLSON, Judges.
INBODY, Chief Judge.

INTRODUCTION
Alfredo Ramirez, also known as Alfredo Strong or Fast Freddy, appeals the decision of the district court for Hall County overruling his motion for a directed verdict at the close of all evidence, subsequently to which a jury convicted Ramirez of failure to stop following personal injury accident and willful reckless driving.

STATEMENT OF FACTS
In the early morning hours of October 7, 2007, Officer Tony Keiper, a police officer with the city of Grand Island, was on patrol in a marked police vehicle in an area which included several bars and businesses. The traffic along the street was moving very slowly, and Keiper was patrolling the vehicles for possible alcohol violations. Keiper was patrolling in the west-bound lane when he recognized Ramirez driving a white Ford Explorer toward him in the eastbound lane. Keiper recognized Ramirez from numerous direct and indirect contacts over the previous 10 years and began to monitor Ramirez through his rearview mirrors because as Ramirez passed Keiper, Ramirez had turned up the stereo in the Explorer to a very high level. Keiper slowed to a stop and made a U-turn into the eastbound lane in order to follow Ramirez and monitor the volume of the stereo when he observed Ramirez roll through a stop sign and accelerate quickly onto another street. Keiper lost sight of the Explorer, at which time a group of individuals outside another bar shouted out to Keiper in which direction the Explorer was traveling.
Keiper accelerated into a primarily residential area and located the Explorer, after he had lost sight of the Explorer for approximately 60 seconds or less when the Explorer accelerated through the stop sign. The Explorer rested against a tree, after having hit several parked vehicles, and sustained severe damage which included the engine pushed into the floorboard, both right wheels' tires pulled off the rims, and extensive damage to the passenger side.
Upon arrival at the scene, Keiper did not see Ramirez in the Explorer or anywhere in the immediate area of the accident, and Ramirez did not return to the scene of the accident anytime thereafter. There were two other passengers in the car, Izaia Alvarez and Julio Chamul. Alvarez *340 exited the back seat of the Explorer, having sustained a scrape and a small, open wound on his head which was bleeding. Alvarez had helped Ramirez out of the driver's seat and then gone around to the front passenger side of the Explorer in an attempt to help Chamul, who was unconscious, bleeding, and hanging from the waist up out of the passenger-side window frame. Keiper instructed Alvarez not to move Chamul in order to prevent further injury to Chamul and called for an ambulance. The ambulance arrived approximately 5 minutes later, just as Chamul started to regain consciousness. Ambulance personnel treated Chamul at the scene, but he was not transported to a hospital for further medical assistance.
Various individuals not involved in the accident started to crowd around the scene, including Ramirez' mother, who was looking for Ramirez. Neither Alvarez nor Chamul indicated to Keiper the driver's identity or location; however, at trial, Alvarez indicated that he had been drinking at a bar with both Ramirez and Chamul and had left the bar with them, with Ramirez driving the Explorer. Alvarez testified that Ramirez was also driving the Explorer when it crashed into the tree.
Alvarez explained that once the Explorer came to a rest, he got out of the back seat and helped Ramirez out of the Explorer and that he did not see Ramirez again that night. Alvarez then helped Chamul, but was instructed by Keiper, who had arrived on the scene, not to move Chamul. Alvarez testified that he became upset with Keiper because he would not help Alvarez provide assistance to Chamul and Alvarez ended up handcuffed in the back of the police vehicle. Chamul also testified that he had been drinking with Ramirez and Alvarez that evening and that the Explorer belonged to Ramirez. Chamul testified that the Explorer was registered in Ramirez' mother's name but Ramirez made the car payments on the Explorer and drove it all the time. However, Chamul testified that an individual named "Creeper" had gotten in the Explorer at some point and was driving it at the time of the accident, although he did not really remember because he had blacked out as soon as he got in the Explorer after leaving the bar.
Ramirez was eventually charged with failure to stop following personal injury accident and willful reckless driving. As indicated above, a jury trial was held on the matter, and at the close of all of the evidence, Ramirez moved for a directed verdict. The trial court denied Ramirez' motion, and the jury convicted him on both counts. Ramirez has timely appealed to this court.

ASSIGNMENT OF ERROR
Ramirez' sole assignment of error is that the trial court erred in overruling his motion for a directed verdict made at the close of all evidence.

STANDARD OF REVIEW
Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. State v. Banks, 278 Neb. 342, 771 N.W.2d 75 *341 (2009); State v. McGhee, 274 Neb. 660, 742 N.W.2d 497 (2007).

ANALYSIS
Ramirez argues that the trial court erred in overruling his motion for a directed verdict made at the close of all the evidence. When a motion for directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law. McClure v. Forsman, 266 Neb. 90, 662 N.W.2d 566 (2003); Moyer v. Nebraska City Airport Auth., 265 Neb. 201, 655 N.W.2d 855 (2003).
In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. State v. Segura, 265 Neb. 903, 660 N.W.2d 512 (2003); State v. Canady, 263 Neb. 552, 641 N.W.2d 43 (2002). If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. Id.
Neb.Rev.Stat. § 60-697 (Cum. Supp. 2008) provides, in part:
The driver of any vehicle involved in an accident upon either a public highway, private road, or private drive, resulting in injury or death to any person, shall (1) immediately stop such vehicle at the scene of such accident and ascertain the identity of all persons involved, (2) give his or her name and address and the license number of the vehicle and exhibit his or her operator's license to the person struck or the occupants of any vehicle collided with, and (3) render to any person injured in such accident reasonable assistance, including the carrying of such person to a physician or surgeon for medical or surgical treatment if it is apparent that such treatment is necessary or is requested by the injured person.
Ramirez contends that the evidence was insufficient to sustain the third requirement of the statute because "reasonable assistance" is not defined in Nebraska statutes or case law and that because Keiper instructed Alvarez not to move Chamul, Ramirez would not have been able to further assist Chamul in any way, essentially rendering Ramirez' duty to give "reasonable assistance" moot. See § 60-697.
The record in this case indicates that Ramirez, Alvarez, and Chamul were drinking together at a bar on the evening of the accident. The three individuals left the bar in Ramirez' Explorer, driven by Ramirez. Keiper recognized Ramirez driving the Explorer and lost visual contact momentarily with the Explorer after it rolled through a stop sign and accelerated onto another street. Shortly thereafter, the Explorer hit several parked cars and made impact with a tree, whereupon it came to a rest. Alvarez helped Ramirez out of the driver's seat, and that was the last time Ramirez was seen by Alvarez that evening. Meanwhile, Chamul was hanging from the waist up out of the passenger-side window frame of the Explorer, bleeding and unconscious. Alvarez attempted to remove Chamul from the Explorer, but was instructed by Keiper not to move Chamul and that an ambulance was on the way.
After viewing all of the evidence in the light most favorable to the State, any rational trier of fact could have found the *342 essential elements of the statute beyond a reasonable doubt, and we need not address Ramirez' contention that the term "reasonable assistance" in § 60-697 is undefined because not only did Ramirez render no assistance, but under these circumstances, it would not have been reasonable for Ramirez to believe he could leave the scene even if a police officer later instructed that no assistance be given to Chamul. The evidence is sufficient to support Ramirez' convictions, and the trial court did not err in overruling his motion for a directed verdict at the close of all the evidence. Ramirez' assignment of error is wholly without merit, and therefore, we affirm.
AFFIRMED.