Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/07/2016 12:10 PM CDT

STATE OF NEBRASKA, APPELLEE, V. MELANIE M. BURKE,
ALSO KNOWN AS MELANIE M. MARSHALL, APPELLANT.

___ N.W.2d ___

Filed March 8, 2016.    No. A-15-293.

1. **Pleadings.** A judicial admission is a formal act done in the course of judicial proceedings.
2. **Pleadings: Intent.** Judicial admissions must be deliberate, clear, and unequivocal, and they do not extend beyond the intent of the admission as disclosed by its context.
3. **Pleadings.** Judicial admissions must occur within judicial proceedings and occur within the case being tried.
4. **Administrative Law.** Administrative proceedings are not judicial and are without judicial effect.
5. **Directed Verdict: Waiver.** Where a defendant makes a motion for a directed verdict at the end of the State's case, whether ruled upon or not, and the defendant thereafter presents evidence, the defendant has waived any error in connection with the motion for directed verdict made at the end of the State's case.
6. **Criminal Law: Intent: Proof: Circumstantial Evidence.** When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence.
7. **Criminal Law: Intent: Circumstantial Evidence.** Intent may be inferred from the words and acts of the defendant and the circumstances surrounding her conduct.
8. **Criminal Law: Public Assistance.** A person commits the offense of violation of public assistance when he or she, by means of a willfully false statement or representation, obtains or attempts to obtain any supplemental nutrition assistance program benefit or electronic benefit card, or any payment to which such individual is not entitled, or a larger payment than to which he or she is entitled.

9. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.
10. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

Appeal from the District Court for Lincoln County: Donald E. Rowlands, Judge. Affirmed.

William J. Erickson and Blaine T. Gillett for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Pirtle, Riedmann, and Bishop, Judges.

Riedmann, Judge.

INTRODUCTION

Melanie M. Burke, also known as Melanie M. Marshall, appeals from her conviction in the district court for Lincoln County, Nebraska, for the crime of "Violation of Public Assistance." After our review of the record on appeal, we affirm.

BACKGROUND

Burke was convicted by a jury of violation of public assistance, a Class IV felony. In June, August, and September 2010, Burke submitted a series of applications for the State's Supplemental Nutrition Assistance Program (SNAP). The State's case centers on Burke's failure to report her husband's workers' compensation income after her first application. The State also highlights other changes Burke made to her subsequent applications, including her valuation of the household's vehicles and her eventual exclusion of her husband as a household member.

Burke's first application in June 2010 listed herself; her husband, Stephen Marshall (Stephen); and her six children as members of her household. Burke reported that Stephen received $644 per week in workers' compensation benefits. She also listed five household vehicles, most notably a Chevy Tahoe with a $4,500 value. After an interview, Burke's application for benefits was denied as being outside the income guidelines.

Burke then submitted a second application in August 2010. She again listed herself, Stephen, and her children as members of her household. On this application, Burke listed no workers' compensation income. However, she had recently won a 2010 Dodge Caliber which she reported as worth $10,000 with no money owed. She also made changes to the values of the other vehicles listed. In particular, Burke now listed the Chevy Tahoe as worth only $1,000 rather than her previous estimate of $4,500, and stated that she owed $380 on it, rather than $0 in her previous application. Burke's application for benefits was again denied as being outside the income guidelines.

Burke then submitted a third application about a week later, in September 2010. Burke again listed that Stephen was a member of her household and not receiving workers' compensation benefits. On this application, Burke listed her new Dodge Caliber as being worth $11,000 rather than $10,000. She listed the Chevy Tahoe as worth $7,100 rather than $1,000, but also stated that she owed $11,000 on it rather than the $380 she had stated on the previous application. In each of these applications, Burke also listed a $1,647 monthly mortgage payment as shared by herself and Stephen. Burke was approved for SNAP benefits of $1,202 per month after her third application.

In her December 2010 and December 2011 interim reports, Burke reported no changes to her household members or income. She continued receiving $1,202 per month over this time period. In her June 2012 reapplication, Burke reported that Stephen had moved out of the household. She also reported monthly mortgage expenses of only $500 and

explained that the rest of the mortgage expenses were still paid by Stephen. After this application, Burke's SNAP benefits were reduced to $957 per month.

When an investigator contacted Burke in February 2013 about the variance in her applications, she submitted a written statement that Stephen "resides [with] his mother [but] comes & goes [at] the house, as he is an active part in raising the kids."

Stephen received weekly workers' compensation benefits during the entire period from June 2010 through August 2011. He received a letter in August 2010 that his permanent partial disability benefits had been paid in full. However, he continued receiving temporary total disability workers' compensation payments after the date of that letter and until January 2013.

If Burke had listed Stephen's workers' compensation income, the family would have been ineligible for SNAP benefits in 2010 and 2011. Burke testified at trial that she had seen Stephen's August 2010 letter about his permanent partial disability benefits ending and had believed that all of his workers' compensation benefits ended.

Burke also testified that between July 2009 and January 2013, Stephen lived in her home for only 6 to 8 weeks. She testified that he was in the home when she submitted all three of her 2010 applications in June, August, and September. She testified that he was not in the household during her January 2011 interim application when she reported no changes, but that she thought she had told a caseworker prior to that time that he was no longer in the home and that she was therefore accurate in reporting no changes. However, there was no record of her telling her caseworker that Stephen had moved out. Burke testified that Stephen was in her home in July 2011 when she made another application to the Department of Health and Human Services reporting him as a household member, but that he moved out again shortly thereafter. She reported "NO CHANGES" in a December 2011 interim report. Burke did not explain why she reported no changes to

household members in December 2011 despite her assertion that Stephen was not then in the home. In June 2012, Burke first reported that Stephen was no longer a household member. Because SNAP benefits are based upon the number of people in the house as well as the household income, listing him as a household member without income increased benefits from September 2010 through June 2012 by approximately $150 per month.

Burke testified that Stephen was always responsible for the couple's mortgage payment, but that she has nothing to do with his finances. She testified that she never intentionally misled anyone.

After the jury found Burke guilty of wrongfully obtaining $6,370 of public assistance, the district court sentenced her to 2 years' probation and restitution.

## ASSIGNMENTS OF ERROR

Burke assigns, restated, that the district court erred in failing to (1) dismiss the matter due to a judicial admission; (2) sustain Burke's motion to dismiss, thus allowing the case to go to the jury with insufficient evidence; (3) properly instruct the jury as to the definition of "willful"; and (4) properly instruct the jury that the amount of pecuniary loss must be determined beyond a reasonable doubt.

## STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Escamilla*, 291 Neb. 181, 864 N.W.2d 376 (2015). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006). Whether jury instructions are correct is a question of law, which an appellate court resolves independently. *State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015).

Consideration of plain error occurs at the discretion of an appellate court. *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007). Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Magallanes*, 284 Neb. 871, 824 N.W.2d 696 (2012).

## ANALYSIS

*Judicial Admission.*

Burke first assigns that the district court erred in failing to dismiss the case after she presented evidence that the State made an alleged judicial admission that Burke's reporting errors were inadvertent. We note that the State argues that this issue was not properly preserved for appellate review because counsel did not use the language "judicial admission" in the hearing on its plea abatement motion below. Assuming without deciding that this issue was properly preserved, we find that it is substantively without merit because the State did not make a judicial admission as to Burke's intent in this case.

[1,2] A judicial admission is "'a formal act done in the course of judicial proceedings.'" *State v. Canady*, 263 Neb. 552, 560, 641 N.W.2d 43, 51 (2002). It may substitute for evidence by conceding for the purpose of litigation that the proposition of fact alleged by an opponent is true. *State v. Canady, supra*. Judicial admissions must be deliberate, clear, and unequivocal, and they do not extend beyond the intent of the admission as disclosed by its context. See *Robison v. Madsen*, 246 Neb. 22, 516 N.W.2d 594 (1994).

[3,4] As an initial matter, judicial admissions must occur within judicial proceedings and occur within the case being tried. See *Nichols Media Consultants v. Ken Morehead Inv. Co.*, 1 Neb. App. 220, 491 N.W.2d 368 (1992). Burke submits evidence that the State pursued recoupment of its overissuance of benefits to her as an "Inadvertent Household Error" rather than as an "Intentional Program Violation" in a separate administrative proceeding. However, administrative proceedings are not judicial and are without judicial effect. See *State ex rel. Stenberg v. Murphy*, 247 Neb. 358, 527 N.W.2d 185 (1995). Thus, any admissions made by the Department of Health and Human Services in the administrative proceeding would not be judicial admissions. The trial court did not err in refusing to dismiss the criminal case on the basis of a statement made by the department in the administrative hearing.

*Directed Verdict and Sufficiency of Evidence.*

[5] Burke next assigns that the district court erred in overruling her motion for directed verdict at the close of the State's case and in allowing the case to go to the jury with insufficient evidence. Burke has waived error in relation to the ruling on a directed verdict by presenting evidence after her motion. *State v. Rodriguez*, 6 Neb. App. 67, 80, 569 N.W.2d 686, 695 (1997) ("where a defendant makes a motion for a directed verdict at the end of the State's case, whether ruled upon or not, and the defendant thereafter presents evidence, the defendant has waived any error in connection with the motion for directed verdict made at the end of the State's case").

However, Burke may proceed on her insufficiency of the evidence argument. She argues in particular that the State did not submit sufficient evidence that her conduct was intentional. She also argues that the State failed to establish a causal connection between any false statements and her provision of benefits. Burke additionally contends that Neb. Rev. Stat. § 68-1017 (Cum. Supp. 2014) requires the State to show that she obtained her SNAP benefits for her use and not for her children. Finally, Burke argues that there was insufficient

evidence to support the jury's finding that she wrongfully obtained over $500 in benefits.

In reviewing an argument that the evidence was insufficient to support a conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Escamilla*, 291 Neb. 181, 864 N.W.2d 376 (2015). We begin with Burke's argument that there was insufficient evidence of her intent.

[6,7] When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence. *State v. Kennedy*, 239 Neb. 460, 476 N.W.2d 810 (1991). Intent may be inferred from the words and acts of the defendant and the circumstances surrounding her conduct. *Id.*

We find sufficient circumstantial evidence on the record to allow a rational trier of fact to find beyond a reasonable doubt that Burke willfully made false statements to obtain SNAP benefits or to obtain more SNAP benefits than she would otherwise be entitled to receive. Here, the evidence establishes that Burke reported her husband's workers' compensation income in one application but then denied this income in two separate applications weeks later after her first application was denied because her household had too high a level of income. Stephen's workers' compensation income, if claimed, would have caused her to continue to be ineligible for benefits. Although Burke stated that she believed her husband's workers' compensation benefits had ended, she also stated that he was always responsible for the parties' $1,647 mortgage payment and she attributed no other income or financial accounts to him. A reasonable trier of fact could conclude from this information that Burke knew Stephen had a source of income and that in order to obtain benefits, she was not reporting it on her SNAP application.

Burke continued to report no changes in her application until June 2012, when she reported that Stephen had moved out of her home; she still did not claim his workers' compensation income at this time. From these actions, when viewed in the light most favorable to the prosecution, a reasonable trier of fact could determine beyond a reasonable doubt that Burke intentionally omitted Stephen's workers' compensation income in order to receive SNAP benefits to which she would not otherwise be entitled. Alternatively, if the jury believed Burke's assertions that Stephen was not a member of the household for almost all of the time period in question, it could find that she intentionally omitted removing him from her applications in order to continue receiving the approximately $150 per month in additional benefits based upon an eight-member household rather than a seven-member household.

Because the State submitted evidence that Burke received $1,202 per month in SNAP benefits to which she would not have been entitled if she had reported Stephen's workers' compensation income, sufficient evidence on the record would allow a finder of fact to find beyond a reasonable doubt that the amount of pecuniary loss was over $500. Alternatively, if the jury accepted that Stephen was not a member of the household during the relevant time period, the State submitted evidence that Burke would have been overpaid by approximately $150 per month due to her statement that Stephen was a member of the household. A rational trier of fact could conclude beyond a reasonable doubt from this evidence that over the time period from September 2010 through June 2012, this type of false reporting would also have resulted in more than $500 in pecuniary loss.

[8] Finally, we disagree with Burke's assertion that § 68-1017 requires the State to show that Burke obtained SNAP benefits for herself rather than for her children. Section 68-1017 provides that a person commits an offense when she, by means of a willfully false statement or representation, "obtains or attempts to obtain . . . any [SNAP] benefit or electronic benefit

card, or any payment to which such individual is not entitled, or a larger payment than to which he or she is entitled." This statute does not include a requirement that the benefits be obtained for one's own use. Because Burke obtained the benefits at issue in this case, it is immaterial whether she used them for herself, for her children, or both.

For these reasons, the evidence on the record is sufficient to uphold the conviction and this assignment of error is without merit.

*Jury Instruction on Definition of "Willful."*

[9,10] Burke next assigns that the district court erred in rejecting her proposed jury instruction on the definition of "willful." Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015). To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Wisinski*, 268 Neb. 778, 688 N.W.2d 586 (2004).

Burke's proposed jury instruction stated that "willfully means intentionally or purposefully and not accidentally or inadvertently." The district court instead elected the pattern jury instruction, which states that "'[w]illfully' means intentionally or purposely, and not accidentally or involuntarily." Therefore, the only difference between the two instructions is Burke's substitution of the word "inadvertently" for the word "involuntarily." Although the pattern instruction omits the word "inadvertently," Burke cannot show that she was prejudiced by the court's adoption of the pattern instruction because "accidentally" is included in the pattern instruction and is synonymous with "inadvertently." Black's Law Dictionary 877 (10th ed. 2014) defines "inadvertence" as follows: "*n.* (15c)

An accidental oversight; a result of carelessness." Burke's proposed instruction also omits the word "involuntarily," but we find nothing confusing in the word's exclusion. Because there is no substantive difference between the instructions in the context of this case, Burke cannot show prejudice. This assignment of error is without merit.

*Jury Instruction on Pecuniary Loss.*

Burke finally assigns that the district court committed plain error in not properly instructing the jury that the amount of pecuniary loss must be found beyond a reasonable doubt. This assignment of error is based upon *State v. Esch*, 290 Neb. 88, 858 N.W.2d 219 (2015), in which we remanded a conviction of criminal mischief for a determination of the amount of loss beyond a reasonable doubt. In that case, the jury instruction stated, "'If you find the State has proven the elements of Criminal Mischief beyond a reasonable doubt, you must also determine what, if any, pecuniary loss was suffered.'" *Id.* at 90, 858 N.W.2d at 221. The instruction did not specify the degree of certainty required for ascertaining the amount of pecuniary loss.

Here, however, the jury instruction did properly instruct the jury that it needed to find the amount of pecuniary loss beyond a reasonable doubt. Jury instruction No. 7 provided in relevant part: "The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict the Defendant of the crime charged are . . . (5) [t]he value of the property or payment which the Defendant obtained or attempted to obtain." Therefore, we find no error in the district court's instruction.

## CONCLUSION

After our review of the record, we find no error by the district court. Accordingly, we affirm its judgment.

Affirmed.