STATE OF NEBRASKA, APPELLEE, V.
WILLIAM BROUDER FREEMAN, APPELLANT.
677 N.W.2d 164

Filed April 9, 2004.   No. S-02-1365.

Gregory A. Pivovar and Anthony S. Troia for appellant.

Jon Bruning, Attorney General, and Marie Colleen Clarke for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE
William Brouder Freeman was convicted of first degree sexual assault and sentenced to a term of 10 to 20 years in prison. Freeman appeals his conviction and sentence.

## SCOPE OF REVIEW
■ Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Segura*, 265 Neb. 903, 660 N.W.2d 512 (2003).

■ A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the verdict. *State v. Shipps*, 265 Neb. 342, 656 N.W.2d 622 (2003).

■ In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. McPherson*, 266 Neb. 734, 668 N.W.2d 504 (2003).

## FACTS

Freeman was charged by information in the Nemaha County District Court with first degree sexual assault, a Class II felony, in violation of Neb. Rev. Stat. § 28-319(1)(a) (Reissue 1995). The information alleged that Freeman had subjected the victim to sexual penetration without her consent. An amended information was later filed, charging Freeman with violation of § 28-319(1)(a) and (b) and alleging that Freeman knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of her conduct.

On February 15, 2001, a party was held at a house in Peru, Nebraska. The victim was a student at Peru State College, where she lived in a women's dormitory. The victim arrived at the party at about 8:30 p.m.

During the next 2 hours, the victim drank four Jack Daniel's "sippers" and about half a bottle of "apple pucker." The victim testified that she was not an experienced drinker and that she was feeling "a little" intoxicated after consuming the alcohol. The victim left the party around 10:30 p.m. to attend a dance on campus. When the dance ended at midnight, she returned to the party, which had grown to include about 75 people, including some that the victim did not know. Upon her return, the victim drank 1½ Jack Daniel's sippers, for a total alcohol consumption of nearly 6 Jack Daniel's sippers and half a bottle of apple pucker.

At some time during the party, the victim began to feel ill and asked one of the residents of the house if she could lie down. On the way to a bedroom, the victim went to the bathroom and vomited. Once in the bedroom, she lay down on the bed. The victim's next memory was when she was awakened and told that the party was over and everyone had left. She was assisted to a couch in another room because she still felt dizzy. All the lights were off in the house, and she did not remember hearing or seeing anyone else in the house.

At some time during the night, the victim awoke but saw no one in the room and went back to sleep. Her next memory was when she awoke on the floor and found a man she could not identify on top of her. She could not see the man's face because the only light in the room came from a street light outside one of the windows. The victim then realized that her pants and underwear

had been removed, but her sweater and bra were still in place. The victim could feel the man's penis in her vagina.

The victim tried to push the man off, but her hands were "stuck" at her sides. The man was bigger than she and broader through the shoulders. The victim did not scream because she was scared and did not know what to do. She felt dizzy and confused. She told the man "to stop and to quit," but he did not stop. When the incident was over, the man got up, said he was going to the bathroom, and pushed the victim's pants and underwear back toward her. She did not recognize his voice, and he did not call her by name.

The victim lay on the floor for a few minutes, feeling paralyzed, scared, and confused. She then put on her underwear and pants and got up onto the couch. She questioned whether the incident actually occurred or if she had dreamed it, and she considered following the man to see who he was. The victim lay down on the couch again and fell asleep. She never saw anyone return from the bathroom.

The victim slept most of the next day. At about 3 p.m., she was awakened by two residents of the house and asked if she was all right. The victim inquired who had been at the party and whether the residents of the house heard anything or saw anyone come in or out after she moved to the couch. She then told them about the incident, and they called the school nurse, who recommended that the victim go to a hospital. The emergency room nurse testified that the victim was shaken, scared, withdrawn, and tearful at times, and had a "flat affect."

Evidence was presented which established that Freeman attended the party on the night in question and that he spent the night at the house. The State also presented evidence that the DNA from a semen stain on the victim's underwear matched Freeman's DNA.

The jury returned a guilty verdict, and the district court found that Freeman had committed a sexual offense which required him to register as a sexual offender under state law. The court found that the victim had suffered serious personal injury, and Freeman was sentenced to a term of 10 to 20 years in prison, with credit for time served. The court told Freeman that he would be eligible for

parole after serving 5 years and subject to discharge after serving 10 years.

## ASSIGNMENTS OF ERROR

Freeman assigns as error that the district court erred (1) in allowing the State to designate a material witness as its representative to sit through the trial despite a sequestration order; (2) in allowing the jury to review a written transcript of Freeman's interview by a deputy sheriff while the jury listened to the tape recording; (3) in allowing the testimony of Jason Laferriere regarding conversations with Freeman prior to trial to show consciousness of guilt; (4) in overruling Freeman's motion for directed verdict or dismissal at the close of the State's case, which motion was based on the State's failure to prove venue and the State's failure to prove Freeman's identity; (5) in not allowing the jury to decide the issue of serious personal injury, which he suggests is an "aggravating factor" under § 28-319(2); (6) in allowing hearsay psychological/psychiatric reports at sentencing as proof of serious personal injury, violating Freeman's right to confrontation; and (7) in imposing an excessive sentence. He also assigns as error the jury's finding of guilt beyond a reasonable doubt.

## ANALYSIS

### DESIGNATION OF STATE'S REPRESENTATIVE

Prior to trial, the State filed a notice designating Brent Lottman, a deputy sheriff for Nemaha County, as its representative for trial, citing Neb. Rev. Stat. § 27-615(2) (Reissue 1995) and *State v. Jackson*, 231 Neb. 207, 435 N.W.2d 893 (1989). Freeman filed an objection to the designation, arguing that Lottman was not a contemplated party under § 27-615(2) and was a material witness of a factual nature. The district court entered an order granting the State's motion to designate Lottman as its representative for trial. Freeman argues that Lottman should not have been present during the entire trial because the court had previously entered a sequestration order and because Lottman was a roommate of Laferriere, a Peru State College student who danced with the victim at the party.

Section 27-615 provides that a party may request the exclusion of witnesses during a trial. The rule does not authorize exclusion

of, inter alia, "an officer or employee of a party which is not a natural person designated as its representative by its attorney." See *id*. In *Jackson*, the State designated its expert witness as its representative and the trial court allowed the expert, a doctor, to remain in the courtroom throughout the trial despite a sequestration order. On appeal, we affirmed the trial court's action in allowing the doctor to be present. Also, in *State v. Canbaz*, 259 Neb. 583, 611 N.W.2d 395 (2000), an expert psychological witness was allowed to remain in the courtroom during the testimony of the defendant's psychological expert. This court approved, noting that the State was limited in its ability to obtain information prior to trial concerning the defendant's mental state.

Freeman argues that because Lottman was involved with the investigation into this incident and interviewed him, Lottman was a key witness for the State and should not have been allowed to hear the testimony of other witnesses. In *Jordan v. State*, 101 Neb. 430, 163 N.W. 801 (1917), this court held that it was not an abuse of discretion for the trial court to allow a sheriff, who was also a witness, to remain in the courtroom despite a sequestration order. The trial court told the defendant he could file an affidavit of prejudice, but the defendant did not file one, and this court found no error because the sheriff was an officer of the court.

While this court has not ruled on the issue recently, several federal cases have held that it is permissible for a law enforcement officer to be present during a trial even where a sequestration order has been entered. See, *United States v. Jones*, 687 F.2d 1265 (8th Cir. 1982); *United States v. Shearer*, 606 F.2d 819 (8th Cir. 1979); *United States v. Woody*, 588 F.2d 1212 (8th Cir. 1978), *cert. denied* 440 U.S. 928, 99 S. Ct. 1263, 59 L. Ed. 2d 484 (1979).

We find no error in the district court's permitting Lottman to remain in the courtroom as the State's representative throughout the trial. This assignment of error has no merit.

### WRITTEN TRANSCRIPT OF TAPE RECORDING

During the investigation, Lottman conducted a tape-recorded interview with Freeman in Lottman's patrol vehicle. The quality of the tape recording was poor and included background noise

from the vehicle's engine. The tape was taken to an audio engineer to filter out some of the background noise. Freeman did not object to the offer of the reproduced tape recording or to the method used to improve the quality of the tape. Because some portions of the tape remained difficult to understand, the State asked if it could provide the jurors with a transcript of the tape prepared by Lottman. Freeman objected to the use of a transcript as being cumulative. The district court allowed use of the transcript, but the jury was instructed that the transcript was to be used as an aid and that the transcript would not be permitted in the jury room.

Freeman complains that the district court erred in allowing the jury to review a written transcript of his interview by Lottman while it listened to the tape recording. He argues that a transcript destroys the purpose of an audio recording because the tonal inflection and strength of the voices are not portrayed. He suggests that the tape itself is the best evidence and that the court abused its discretion in allowing the jury to have a transcript.

The Nebraska Court of Appeals was presented with a similar question in *State v. Wade*, 7 Neb. App. 169, 581 N.W.2d 906 (1998). There, the jury was provided with a transcript prepared by an undercover officer who was present when a drug transaction was recorded. The appellate court stated:

> [I]t is well established that one who is present and hears the conversation in question at the time the recording is made may testify for the purpose of clarifying inaudible or unintelligible portions of the recording. *State v. Loveless*[, 209 Neb. 583, 308 N.W.2d 842 (1981)]. Additionally, the court specifically instructed the jury that the transcripts were to be used only as assistance in following the recordings and that they, as the finders of fact, were free to rely on their own judgment of what the recordings said . . . . With regard to the transcript, we find that it accurately reflects the decipherable statements and is of great value in helping the listener follow the conversations and identify the speakers. We conclude, based upon *State v. Loveless, supra,* that the court properly admitted the transcripts for the limited purpose of helping the jury follow along with the recordings.

*Wade,* 7 Neb. App. at 183-84, 581 N.W.2d at 916.

In *State v. Loveless*, 209 Neb. 583, 308 N.W.2d 842 (1981), this court approved the use of transcripts of audio recordings as an aid to the jury. The court cited *United States v. Onori*, 535 F.2d 938 (5th Cir. 1976), in which the federal court noted that transcripts may be needed and allowed at the court's discretion in two instances: (1) if portions of the tape are relatively inaudible or (2) if it is difficult to identify the speakers.

In the present case, the district court was careful to instruct the jury that the transcript was provided merely as an aid and that the transcript would not be allowed into the jury room during deliberations. The court acted within its discretion, and this assignment of error is without merit.

### Consciousness of Guilt

Freeman assigns as error the district court's admission of Laferriere's testimony concerning a conversation he had with Freeman prior to trial. Laferriere was at the party on February 15, 2001, and was seen dancing with the victim. The State offered the testimony to attempt to demonstrate that Freeman acted to influence Laferriere's testimony concerning the events of the night in question and to demonstrate Freeman's consciousness of guilt concerning his actions that night.

The district court conducted a hearing outside the presence of the jury, during which Laferriere testified that when he saw Freeman at a bar in Omaha on Memorial Day weekend in 2002, Freeman asked if Laferriere had been contacted by attorneys or police about this case. Laferriere stated that he had not been contacted. Freeman then asked Laferriere if he had kissed the victim the night of the party. When Laferriere stated that he had not kissed her, Freeman reportedly said, " 'Well, it would help me out if you did.' " Laferriere then turned and left. The court asked Laferriere if he accurately remembered whether Freeman had said, " 'It would help me out if you did,' " or if it was possible that Freeman said, " 'It would have helped me out if you did.' " Laferriere said he was not 100 percent sure of Freeman's words.

The district court made a finding that the testimony was admissible and that it would be the jury's determination as to the weight of the testimony. In the presence of the jury, Laferriere testified that Freeman asked Laferriere if he had kissed the victim the night

of the party. According to Laferriere, he stated that he had not kissed her, and Freeman reportedly said, " 'Well, it would help me if you did.' "

In *State v. DeGroot*, 230 Neb. 101, 430 N.W.2d 290 (1988), evidence was presented that the defendant asked a witness to testify for him, telling the witness to give information that would provide the defendant with an alibi. The witness testified that he would have been lying if he had testified as requested by the defendant. We found no abuse of discretion in the trial court's determination that evidence of the defendant's attempt to procure false testimony was relevant. We cited *State v. Adair*, 106 Ariz. 4, 469 P.2d 823 (1970), in which the court held that evidence of the defendant's threatening witnesses was admissible to demonstrate a consciousness of guilt. We held that "[t]he State may properly argue and introduce evidence relating to the defendant's attempt to suppress evidence or otherwise avoid the fair adjudication of a dispute." *DeGroot*, 230 Neb. at 108, 430 N.W.2d at 294-95.

This court has also held that "[a] defendant's attempted intimidation or intimidation of a State's witness is evidence of the defendant's 'conscious guilt' that a crime has been committed and serves as a basis for an inference that the defendant is guilty of the crime charged." *State v. Clancy*, 224 Neb. 492, 499, 398 N.W.2d 710, 716 (1987), *disapproved on other grounds, State v. Culver*, 233 Neb. 228, 444 N.W.2d 662 (1989). Such attempted intimidation or intimidation is relevant evidence under Neb. Rev. Stat. § 27-404(2) (Reissue 1995) as to the defendant's consciousness of guilt that a crime has been committed. In *Clancy*, evidence was presented that the defendant had called a woman and threatened to kill her or her husband or to blow up their house if the woman provided further information to law enforcement authorities.

The testimony of Laferriere was offered to suggest that Freeman sought to have Laferriere testify that he had kissed the victim on the night of the assault. However, Laferriere was unable to state with assurance the exact words used by Freeman. The conversation took place at a chance encounter in a bar where loud music was playing in the background. The district court itself noted that admission of the testimony was a close call.

Laferriere's testimony alone does not show clearly and convincingly that Freeman committed any other crime, wrong, or

act. The facts here are dissimilar to other cases in which such testimony has been allowed. Freeman did not threaten Laferriere if he testified, and Freeman did not pursue the issue after Laferriere turned and walked away. Freeman did not suggest that Laferriere should commit perjury.

We find that the district court's admission of this testimony was error; however, the error was harmless. In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *State v. Canady*, 263 Neb. 552, 641 N.W.2d 43 (2002). Harmless error review looks to the basis on which the jury actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. *State v. Miner*, 265 Neb. 778, 659 N.W.2d 331 (2003).

Other evidence at trial supported the jury's verdict, and we conclude that the verdict rendered was unattributable to the error. This assignment of error has no merit.

### VENUE AND IDENTITY

Freeman asserts that the district court erred in overruling his motion for directed verdict or for dismissal at the close of the State's case, arguing that the State failed to prove venue and to prove his identity. Freeman argues that the State did not present competent evidence that the crime occurred in Nemaha County or that he was the William Brouder Freeman accused of the sexual assault.

This court has held that venue may be proved like any other fact in a criminal case. *State v. Liberator*, 197 Neb. 857, 251 N.W.2d 709 (1977). " 'It need not be established by direct testimony, nor in the words of the information, but if from the facts in evidence the only rational conclusion which can be drawn is that the crime was committed in the county alleged, the proof is sufficient.'. . ." *Id.* at 858, 251 N.W.2d at 710, quoting *Gates v. State*, 160 Neb. 722, 71 N.W.2d 460 (1955). Accord *State v. Laflin*, 201 Neb. 824, 272 N.W.2d 376 (1978).

In *State v. Scott*, 225 Neb. 146, 152, 403 N.W.2d 351, 355 (1987), *disapproved on other grounds, State v. Culver*, 233 Neb. 228, 444 N.W.2d 662 (1989), the defendant asserted that the trial court erred in failing to dismiss the case against him when the State did not establish venue, "a jurisdictional element of the State's proof." This court reviewed the record and found that while the State had failed to directly prove venue, it provided evidence that the crimes occurred in Hitchcock County. A contract admitted into evidence included language identifying the property's location as Hitchcock County. Other evidence identified Hitchcock County as the location of the grain warehouse. Testimony was offered from the Hitchcock County sheriff, and another witness lived in that county. We held that sufficient proof was offered to demonstrate that the crimes were committed in Hitchcock County and that the trial court correctly overruled the defendant's motion for a directed verdict based on a failure to establish venue.

In the case at bar, the victim testified that she was a student at Peru State College and that the party she attended was in a house six blocks from campus. One of the residents of the house testified that she lived on Fifth Street in Peru in Nemaha County. Another of the house's residents testified to the specific address of the house. Lottman, a Nemaha County deputy sheriff, investigated the incident. A criminal investigator with the Nebraska State Patrol testified that he collected a comparative DNA sample from Freeman, and a criminalist with the Nebraska State Patrol crime laboratory testified as to the results of the DNA testing. The *Miranda* form signed by Freeman and entered into evidence indicates that it is the form used by the sheriff's office in Nemaha County. The only rational conclusion that can be drawn from this evidence is that the incident occurred in Peru, Nemaha County, Nebraska. Venue was adequately proved.

Freeman also argues that the district court erred in failing to grant his motion for directed verdict or dismissal because the State failed to prove his identity beyond a reasonable doubt. In his brief, Freeman states, "What is obvious is that no one was asked to identify or did identify the defendant as the William Freeman they were referring to." Brief for appellant at 32. Although DNA evidence linked Freeman to the assault, he argues

that the person who testified to collecting the swabs for the DNA test never identified him as the individual from whom the samples were collected.

A similar argument was made in *State v. Kaba*, 217 Neb. 81, 83, 349 N.W.2d 627, 630 (1984), where the court noted:

> [U]nfortunately, the county attorney failed to ask any State's witness two basic questions: (1) Is the defendant, Kenneth Kaba, in the courtroom today? (2) Would you point out the defendant, Kenneth Kaba? Contrary to the defendant's position, however, under the facts of this case the omission of an in-court identification does not require acquittal.

In *Kaba*, this court reviewed holdings on this issue from other states. In *State v. Hutchinson*, 99 N.M. 616, 661 P.2d 1315 (1983), the court ruled that sufficient evidence was presented to allow the jury to draw the inference that the person on trial had committed the crimes. In *State v. Hill*, 83 Wash. 2d 558, 520 P.2d 618 (1974), the appellate court held that while the omission of specific in-court identification was not recommended, the evidence was sufficient to establish the defendant's identity. The *Kaba* court then applied the rationale of these cases to the evidence and found, "beyond a reasonable doubt, that the Kenneth Kaba who appeared in the courtroom during the trial was the Kenneth Kaba whose behavior was reported by the witnesses." 217 Neb. at 86, 349 N.W.2d at 631.

This issue was also raised in *State v. Hoxworth*, 218 Neb. 647, 358 N.W.2d 208 (1984), where we concluded that the identity of the defendant was not at issue and that he was present at trial. This court also noted that the testimony was filled with references to the defendant by various witnesses.

In the present case, at the outset of the trial, the district court noted that Freeman was present with counsel. Five individuals who were friends or classmates of Freeman testified, and as we noted in *Kaba*, "It is inconceivable that [the witness] would sit silently by, knowing the wrong man had been brought to trial." 217 Neb. at 88, 349 N.W.2d at 632. Two law enforcement officers who had contact with Freeman also testified. None of these individuals suggested that the person on trial and present in the courtroom was not the same person they knew as William Freeman. The district court did not err in denying Freeman's motion for

directed verdict or for dismissal on the basis of a failure to prove identity. This assignment of error is without merit.

SERIOUS PERSONAL INJURY

Freeman argues that the district court erred in not allowing the jury to decide the issue of serious personal injury, which he describes as "an element of the crime," brief for appellant at 33, and an "aggravating factor" under § 28-319(2).

Section 28-319(2) provides that first degree sexual assault is a Class II felony and that "[t]he sentencing judge shall consider whether the actor caused serious personal injury to the victim in reaching a decision on the sentence." "Serious personal injury" is defined in Neb. Rev. Stat. § 28-318(4) (Reissue 1995) as "great bodily injury or disfigurement, extreme mental anguish or mental trauma, pregnancy, disease, or loss or impairment of a sexual or reproductive organ."

Serious personal injury is not an element of first degree sexual assault. Section 28-319(2) merely states that a sentencing judge shall take any serious personal injury into consideration in imposing sentence.

Freeman asserts that the issue of serious personal injury was not submitted to the jury for its determination and that the district court made no effort to address the issue until sentencing. At sentencing, the victim addressed the court to express the emotional toll taken by the incident. The court subsequently found that the victim had suffered "a major harm" or "serious personal injury" as defined in § 28-319.

Freeman does not cite *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), but that case is apparently the basis for his argument. In *Apprendi*, the U.S. Supreme Court held that other than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. See *State v. Becerra*, 263 Neb. 753, 642 N.W.2d 143 (2002). *Apprendi* made clear that it was concerned only with cases involving an increase in penalty beyond the statutory maximum. See *Becerra, supra.*

Other courts have considered the impact of *Apprendi* on sentencing issues. In *People v. Allen*, 78 P.3d 751, 754 (Colo. App.

2001), the appellate court reviewed a statute which provided that the trial court was to consider " 'extraordinary aggravating circumstances' " in determining whether to impose a sentence in the "aggravated range." The court held that such circumstances are those normally considered by a trial court, including the defendant's character and history, and that the circumstances rise to the level of "extraordinary" because of their quantity or quality. The court found that *Apprendi* did not apply because the consideration of extraordinary aggravating circumstances did not mandate an increased penalty range or class of the offense, as did the Colorado statute that elevated sexual assault from a Class III felony to a Class II felony if it was accompanied by serious bodily injury. In Minnesota, the Court of Appeals has held that *Apprendi* applies only to situations where a sentence exceeds the statutory maximum. See *State v. McCoy*, 631 N.W.2d 446 (Minn. App. 2001).

*Apprendi* does not apply in this case. The key provision of the holding in *Apprendi* is that the jury must determine "any fact that increases the penalty for a crime beyond the prescribed statutory maximum." See 530 U.S. at 490. Here, Freeman was sentenced to a term of 10 to 20 years in prison for a Class II felony, where the maximum possible term was 50 years. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2002). Freeman's sentence was within the statutory limits.

In addition, prior to *Apprendi*, this court held that no evidentiary hearing is required prior to sentencing to determine whether a victim has sustained serious personal injury. See *State v. Bunner*, 234 Neb. 879, 453 N.W.2d 97 (1990). We held that a sentencing judge shall consider information appropriately before the court in the sentencing process, rather than conducting an evidentiary hearing. The holding of *Bunner* has not been altered by *Apprendi* because any injury sustained by the victim is not an element of the crime.

Freeman also relies on *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989). In that case, we stated:

Whether "serious personal injury to the victim" . . . is an element of the crime of second degree sexual assault or simply a jury determination of the degree of the crime committed need not be decided in this case. The controlling fact

is that for the defendant to be convicted of second degree sexual assault, there must be a jury determination as to whether the victim suffered "serious personal injury."
*Id.* at 399, 436 N.W.2d at 511.

The issue arose in *Beermann* in relation to charges of second degree sexual assault and sexual assault of a child under Neb. Rev. Stat. § 28-320 (Reissue 1985). The degree of sexual assault was determined by whether the actor caused serious personal injury to the victim. If such injury occurred, the crime was sexual assault in the second degree, and if no such injury occurred, the crime was sexual assault in the third degree. *Beermann* does not apply to the case at bar because serious personal injury is not an element of the crime charged, which was first degree sexual assault.

We conclude that the district court did not err in considering serious personal injury when determining Freeman's sentence. This assignment of error has no merit.

### RIGHT OF CONFRONTATION

According to Freeman, the district court erred in allowing hearsay psychological/psychiatric reports at sentencing as proof of serious bodily injury, violating his right to confrontation. He does not argue this error separately, but it is subsumed in his allegation that the court should have submitted the issue of injury to the jury.

It appears that Freeman is objecting to the district court's consideration of a report from a psychologist who testified for the State at a pretrial hearing because the State desired to present evidence at trial related to posttraumatic stress disorder and sexual assault. The evidence was not admitted at trial and was not heard by the jury, but the State submitted psychiatric evaluations of the victim as part of the presentence report.

At the sentencing hearing, the district court asked Freeman's counsel whether he had reviewed the presentence report. Counsel indicated that he had, and he raised no objection to the report's contents. At that point, Freeman was offered an opportunity to address the court, and he declined.

This court has held that a defendant waives the right to personally review his presentence report with his counsel if he fails to notify the trial court that he has not reviewed it and that he

wishes to do so. See *State v. Plant*, 248 Neb. 52, 532 N.W.2d 619 (1995), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). The failure to object to the presentence report precludes a defendant from challenging it on appeal. See *State v. Tyrrell*, 234 Neb. 901, 453 N.W.2d 104 (1990). Freeman did not object to the psychological report in the presentence report on any basis, and he cannot now suggest that his right to confront the author of the report has been violated. This assignment of error is without merit.

### EXCESSIVE SENTENCE

Freeman claims that the district court erred in imposing an excessive sentence. First degree sexual assault is a Class II felony and is punishable by a term of 1 to 50 years in prison. See §§ 28-105 and 28-319. Freeman was sentenced to a term of 10 to 20 years in prison.

Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Segura*, 265 Neb. 903, 660 N.W.2d 512 (2003). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id*. In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002).

The district court reviewed the presentence report, which indicated that Freeman had previously been convicted of possession of a controlled substance, for which he served 4 months in jail, and of false reporting and criminal mischief, for which he was sentenced to 45 days in jail. He has also been charged twice with driving while under the influence. The victim in this case addressed the court as to her emotional trauma following this incident.

The district court took this information into consideration and imposed a sentence within the statutory limits. We find no abuse of discretion in the sentence, and this assignment of error has no merit.

## SUFFICIENCY OF EVIDENCE

Freeman asserts that the jury erred in finding him guilty beyond a reasonable doubt. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the verdict. *State v. Shipps,* 265 Neb. 342, 656 N.W.2d 622 (2003). In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. McPherson,* 266 Neb. 734, 668 N.W.2d 504 (2003).

The jury heard evidence that the victim was sexually assaulted as she lay sleeping. DNA evidence was presented which showed that Freeman's semen was present on the victim's underwear. The evidence established that the victim was incapacitated by alcohol, and her assailant knew or should have known that she was mentally or physically incapable of resisting or appraising the nature of her conduct. Construing the evidence in a light most favorable to the State, the evidence is sufficient to support the jury's verdict. This assignment of error is without merit.

## CONCLUSION

We find no error or abuse of discretion on the part of the district court, and Freeman's conviction and sentence are affirmed.

AFFIRMED.