IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
(Memorandum Web Opinion)

STATE V. WALKER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MICHAEL C. WALKER III, APPELLANT.

Filed December 19, 2017.    Nos. A-17-144, A-17-145.

Appeals from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Judgment in No. A-17-144 affirmed. Judgment in No. A-17-145 affirmed as modified.

William J. Pfeffer, of Pfeffer Law Offices, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

INBODY, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

## INTRODUCTION

This case involves two appeals from the district court for Douglas County, which have been consolidated for briefing and disposition. In case No. A-17-144, Walker pled no contest to possession of a deadly weapon by a prohibited person, a Class ID felony, and the court sentenced him to 45 to 50 years' imprisonment. In case No. A-17-145, Walker pled no contest to manslaughter, a Class III felony, and the court sentenced him to 19 to 20 years' imprisonment.

In both cases, Walker argues the district court imposed an excessive sentence. The State contends that the sentences were not excessive, but that the court did commit plain error in its crediting for time served. We affirm the sentencing order in case No. A-17-144. However, we modify the sentencing order in case No. A-17-145.

- 1 -

BACKGROUND

*Case No. A-17-144.*

On February 17, 2016, the State filed an information charging Walker with two counts of possession of a deadly weapon by a prohibited person, both Class ID felonies, pursuant to Neb. Rev. Stat. § 28-1206(1)(a) and (3)(b) (Reissue 2016), and one count of possession of a stolen firearm, a Class IIA felony, pursuant to § 28-1212.03. These offenses were alleged to have occurred on December 14, 2015. The alleged offenses occurred after August 30, 2015, the effective date of 2015 Neb. Laws, L.B. 605, which changed the classification of certain crimes and made certain amendments to Nebraska's sentencing laws.

*Case No. A-17-145.*

On February 16, 2016, the State filed an information charging Walker with three counts: (1) first degree murder, a Class IA felony, pursuant to Neb. Rev. Stat. § 28-303(1) (Reissue 2008); (2) use of a deadly weapon (firearm) to commit a felony, a Class IC felony, pursuant to Neb. Rev. Stat. § 28-1205(1)(a) and (1)(c) (Reissue 2016); and (3) possession of a deadly weapon by a prohibited person, a Class ID felony, pursuant to § 28-1206(1)(a) and (3)(b). The offenses, including the alleged murder of Elston McArthur, were alleged to have occurred on March 6, 2015. Therefore, they would have occurred before the August 30, 2015, effective date of L.B. 605.

*Plea Hearing.*

A plea hearing for both cases was held on November 29, 2016. Pursuant to a plea agreement, the State filed an amended information in case No. A-17-144, charging Walker with one count of possession of a deadly weapon by a prohibited person, a class ID felony, pursuant to § 28-1206(1)(a) and (3)(b). The State also filed an amended information in case No. A-17-145, charging Walker with one count of manslaughter, a Class III felony, pursuant to Neb. Rev. Stat. § 28-305(1) (Reissue 2008). The State also amended the date of the alleged offense in case No. A-17-145 to February 24, 2015.

Walker pled "no contest" to possession of a deadly weapon by a prohibited person (case No. A-17-144, post-L.B. 605), and manslaughter (case No. A-17-145, pre-L.B. 605).

The State provided a factual basis for case No. A-17-145. On March 6, 2015, Omaha police officers received a report of a suspected homicide occurring at a residence on Blondo Street. The reporting parties indicated they were friends of the resident of the home, Elston McArthur. Having not heard from him for a number of days, they went to his home to check on him. Upon arriving at the home, they found the doors locked and they were able to hear a television on inside. They pried the door open and found him dead, with apparent gunshot wounds.

Officers searched the home and found no sign of forced entry, except for what was done by McArthur's friends. Seven projectiles and numerous casings were found, along with mail addressed to Shawnte Kitchen.

McArthur's employer indicated that he reported to work on February 24, 2015, but he did not come to work or call in on February 25, which was unusual behavior for him.

McArthur's family and friends reported to police officers that McArthur intended to kick his roommate, Kitchen, out of his home as he was having problems with their living arrangement. He indicated to family and friends that if he was not heard from, they should contact authorities.

Officers contacted Kitchen in early March 2015. She reported that she had been living in McArthur's home with her husband, Darryl Wellon, and they moved out of the home on February 24, 2015. She said McArthur was alive when she left the home. Wellon reported the same information to police officers.

One of McArthur's friends reported visiting McArthur's home on February 25, 2015. He noted the shades were drawn and that the television was on, but McArthur did not answer the door or the phone. The friend noted this was unusual.

Ballistics reports led the police to believe that two guns were involved. Six projectiles appeared to have been fired from the same gun, and the seventh did not appear to match the others, or any of the casings found in McArthur's home. The firearms were believed to be a .32-caliber semiautomatic, and a .32-caliber revolver.

On May 15, 2015, an informant said he was friends with Wellon and Michael Walker, and that after McArthur's death, Wellon indicated that they "took care of" McArthur because he was disrespectful to Kitchen on February 24. The informant told the police that Walker attempted to sell him a .32-caliber semiautomatic and told him the gun "had a body on it." When he inquired further as to what Walker meant, Walker said "remember that thing over on 35th and Blondo, that was me and Bow Wow." The informant told officers that Wellon's nickname was Bow Wow.

On June 1, 2015, officers arranged for a confidential informant to make contact with Walker and attempt to purchase the .32-caliber semiautomatic. That purchase was audio and video recorded, and, in the course of that purchase, Walker informed the confidential informant to be careful as the firearm "had a body on it."

Ballistics were performed on the .32-caliber semiautomatic. The six projectiles that were found in McArthur's home could have been fired from the gun, as it was compatible caliber, but the ammunition was low quality. As a result, the tests were inconclusive as to whether the projectiles were fired from that specific gun.

On December 15, 2015, Kitchen contacted the police and indicated that she wished to make an additional statement regarding McArthur's death. She indicated that on February 24, she and Wellon sought Walker's assistance to move out of McArthur's home. Kitchen and Wellon got into a verbal argument with McArthur. McArthur called Kitchen a bitch, and Wellon took offense to that statement. As they finished moving, Kitchen went to the car and listened to music. She lost sight of Walker and Wellon, believing that they had gone inside for a short period of time.

When Wellon and Walker exited the home, they got into the car and Walker drove away. Kitchen attempted to contact McArthur a short while after leaving the home but she got no response. Kitchen asked Wellon if he had any idea what had happened to McArthur, and Wellon indicated that he did not believe McArthur was still alive. A couple of days after the incident, Kitchen accompanied Wellon to dispose of a .32-caliber revolver by throwing it down a drain. All of these events occurred in Douglas County, Nebraska.

According to the factual basis provided by the State, in case No. A-17-144, Omaha police officers intercepted a jail call from Walker to his suspected girlfriend in which he instructed her to

"get the little bitch out of -- out of the house." The officers believed that this was code for a firearm and they obtained a search warrant. On December 14, 2015, officers conducted a search of Walker's home. The State asserted:

> In the basement of the home, officers located two firearms in a plastic zip-up comforter bag. One of the firearms being a black Hi-Point C-9 9-millimeter, fully loaded with a magazine and one round in the chamber as well as a Stevens Model 94 410-guage shotgun, loaded. Both of these firearms were tested for DNA and came back positive for the DNA of Michael Walker.
>
> Additionally, in speaking with an individual in the home who identified herself as Kristin Gibson, officers learned that Michael Walker was residing at that home. Additionally, officers located a driver's license and wallet belonging to Michael Walker in the main bedroom. OPD property tested both of these firearms and they test fired and were operable.

The State offered Exhibit 1 into evidence, and it was received without objection. Exhibit 1 contains a court record showing Walker was convicted of a felony in 2013.

The district court accepted Walker's no contest pleas to possession of a deadly weapon by a prohibited person (case No. A-17-144), and manslaughter (case No. A-17-145), and found him guilty of the same.

The sentencing hearing for both cases was held on January 17, 2017. In case No. A-17-144, possession of a deadly weapon by a prohibited person, the district court sentenced Walker to imprisonment for a period of 45 to 50 years, with 401 days' credit for time served. In case No. A-17-145, manslaughter, the district court sentenced Walker to imprisonment for a period of 19 to 20 years, with 368 days' credit for time served. The sentences were ordered to run consecutively. Orders memorializing the court's sentences were filed the same day. Walker now appeals.

## ASSIGNMENTS OF ERROR

Walker assigns the district court abused its discretion by imposing excessive sentences. He also assigns there were inaccuracies in the presentence investigation report (PSI) that prejudiced him.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016).

## ANALYSIS

Walker asserts the district court imposed excessive sentences, claiming the court failed to adequately consider and apply the necessary factors, including his age, education and experience, social and cultural background, and past criminal record. He argues that he was 27 years old at the time of sentencing and, with the sentences imposed, he will be approximately 60 years old when he is released. He will be released with no residence, no guarantee of employment, no guarantee

that his substance abuse issues will be resolved, and he will never be given the opportunity to become a productive member of society. Brief for appellant at 7.

Walker also argues that he lacked a relationship with his father, and he was involved in gang activity and drug use from the age of 14. He pleads for leniency because the sentence imposed will affect his ability to cultivate and maintain a relationship with his own biological child, and he does not want his child to face the same challenges he had in his youth.

The State contends the sentences were not excessive. Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

Walker argues there were inaccuracies in the PSI that prejudiced him, including statements that he was convicted of crimes he was merely charged with. For example, he argues that he was not convicted of burglary nor any crimes involving assaultive behavior or domestic violence. He argues that the PSI should not refer to "dismissals and non prosecutions" as if Walker had actually committed the crimes. Brief for appellant at 12. While the portions of the report that Walker refers to discuss all of the crimes charged, the report also includes information regarding the disposition of each case, explicitly identifying the cases in which the charges were dismissed or no action was taken to prosecute Walker.

He refers to a portion of the sentencing hearing in which the court stated that "*all tests* were found to be high risk" (emphasis supplied). Walker argues the court's statement was inaccurate because he scored in the "low risk" range for violence on the SAQ-Adult Probation III assessment, which is referenced in the PSI. However, in reference to the LS/CMI domains, the PSI indicates Walker scored in the "very high risk" categories for criminal history, family/marital, companions, education/employment, pro-criminal attitude/orientation, and anti-social behaviors. He also scored in the "high risk" categories for leisure/recreation and alcohol/drug problems. On appeal from a criminal sentence, it is presumed that in considering a presentence report, the sentencing judge considered only material which is relevant and competent. *State v. Tyrrell*, 234 Neb. 901, 453 N.W.2d 104 (1990). There is no reference in the court's comments or sentencing order indicating the court relied upon information in the PSI that was incorrect or misleading, therefore we cannot find that the court relied upon incorrect or improper information in reaching a determination regarding the appropriate sentence.

He also asserts the PSI misclassified a weapons concealment charge as a "firearms possession charge," arguing that he had only three convictions for firearms possession, rather than four. He argues that it is "disheartening" to see the PSI mention these inaccuracies in the evaluation of Walker's "procriminal Attitude/Orientation" Brief for appellant at 12. He argues that the PSI "should be fair, impartial, unbiased and truthful. Clearly it is not." *Id.*

Even if the PSI misclassified a "weapons concealment" conviction as a firearm possession offense, Walker readily admits that he has three convictions for possession of firearms. At sentencing, he took full responsibility for possessing the firearm(s) which gave rise to the charges and ultimate conviction for possession of a deadly weapon by a prohibited person in case No. A-17-144. Further, the record shows that even though Walker pled no contest to one charge for

possession of a deadly weapon by a prohibited person, the police recovered three firearms, two of which were loaded. These facts support the findings in the PSI that Walker is an individual who is at risk to reoffend.

In addition, Walker was given the opportunity to address the district court at sentencing and could have highlighted any issues he had with the language of the PSI at that time. The failure to object to the presentence report precludes a defendant from challenging it on appeal. *State v. Freeman*, 267 Neb. 737, 677 N.W.2d 164 (2004).

The district court stated that it reviewed the PSI, the letters from Walker, and McArthur's family and friends, and considered all of the relevant sentencing factors. The court specifically stated that these crimes cause concern for the safety of the public, and the PSI indicated that Walker was at a high to very high risk to continue these types of behaviors. The court then pronounced the sentences.

Walker's offense in case No. A-17-144, possession of a deadly weapon by a prohibited person, is a Class ID felony. That offense occurred after L.B. 605 and was punishable by a mandatory minimum of 3 years' imprisonment and a maximum of 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Walker's offense in case No. A-17-145, manslaughter, is a Class III felony. That offense occurred before L.B. 605 and was punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both a fine and imprisonment. See § 28-105 (Cum. Supp. 2014).

Walker argues that he received a longer sentence for possessing a firearm than he did for a conviction of manslaughter. Brief for appellant at 11. This is a somewhat misleading statement, as the longer of his two sentences was imposed because he was in possession of a deadly weapon as a *prohibited person,* a fact which enhances the severity of the crime and the resulting punishment. While it may seem unusual that Walker's sentence for manslaughter (a death) is substantially less than his sentence for possession of a deadly weapon by a prohibited person (which arose from a controlled buy), the classifications and sentencing ranges for these felonies have been established by the Legislature. The sentences are both within the statutory ranges for their respective classifications. And although the sentences in both cases are on the high-end of the sentencing range, after considering the relevant factors in this case, as discussed above, we find Walker's sentences were not excessive or an abuse of discretion.

The State asserts there was a potential issue of plain error. We find the district court did commit plain error in its crediting of time served. The court gave Walker credit for 401 days' served in case No. A-17-144, and 368 days' credit for time served in case No. A-17-145, and the sentences in both cases were ordered to run consecutively.

The PSI indicates Walker was arrested in case No. A-17-144 on December 14, 2015, and remained incarcerated until sentencing on January 17, 2017, a total of 401 days. The PSI indicates Walker was arrested in case No. A-17-145 on January 15, 2016, and remained incarcerated until sentencing on January 17, 2017, a total of 368 days.

Neb. Rev. Stat. § 83-1,106 (Reissue 2014) provides in part that an offender is to be given credit for time spent in custody as a result of a criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. However, credit for time served may only be applied once, and an offender who receives consecutive sentences is entitled to credit against only the first sentence imposed. See, § 83-1,106; *State v. Williams,* 282 Neb. 182,

802 N.W.2d 421 (2011) (under § 83-1,106, offender who receives consecutive sentences is entitled to credit against only first sentence imposed); *State v. Banes*, 268 Neb. 805, 688 N.W.2d 594 (2004) (under § 83-1,106, offender shall be given credit for time served as result of charges that led to sentences; however, presentence credit is applied only once).

Therefore, as requested by the State, we find the 401-day credit should apply against only the sentence imposed in case No. A-17-144. Accordingly, we affirm the sentencing order in case No. A-17-144. But we modify the sentencing order in case No. A-17-145 to strike the 368-day credit granted against the sentence in that case.

## CONCLUSION

For the reasons stated above, we affirm the sentencing order in case No. A-17-144. However, we modify the sentencing order in case No. A-17-145 to strike the 368-day credit granted against the sentence in that case.

JUDGMENT IN NO. A-17-144 AFFIRMED.
JUDGMENT IN NO. A-17-145 AFFIRMED AS MODIFIED.