IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. HERRERA


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

JENNA M. HERRERA, APPELLANT.


Filed March 25, 2025.    No. A-24-685.


Appeal from the District Court for Scotts Bluff County: ANDREA D. MILLER, Judge. Affirmed.

Allison M. Witcofski, of Douglas, Kelly, Ostdiek, Snyder, Ossian & Vogl, P.C., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.


MOORE, PIRTLE, and WELCH, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Jenna M. Herrera was convicted in the district court for Scotts Bluff County on two counts of distributing methamphetamine. On appeal, she assigns three errors related to the insufficiency of the evidence used to convict her along with several claims of ineffective assistance of counsel. For the reasons that follow, we affirm.

## II. BACKGROUND

In August 2021, Undreia Garza was working with law enforcement as a cooperating individual to reduce her and her husband's criminal charges. In this role, she participated in multiple controlled buys of methamphetamine. On August 2 and 23, Herrera was the target of

Garza's controlled buys. On both occasions, Garza went to Herrera's apartment and bought approximately 7 grams of methamphetamine from her.

On April 2, 2024, Herrera was charged with two counts of distributing a controlled substance, to wit, methamphetamine, a Class II felony. She pled not guilty to the charges. A trial was held on July 8. At the trial, the State called Garza, Investigator William Howton, Trooper David Hunter, Investigator Jordan McBride, and Meggan Macomber. Herrera then testified in her own defense.

Garza testified about how she was currently sentenced to 365 days' imprisonment in a Wyoming prison for forgery charges. In a deal to drop another forgery charge, she offered to cooperate with law enforcement by doing controlled buys. She stated that she had completed multiple controlled buys targeting other individuals before targeting Herrera. Her controlled buys with Herrera were videotaped and the recordings were offered and received into evidence.

On August 2, 2021, Garza was picked up by law enforcement and dropped off near Herrera's apartment. She waited there for around an hour before Herrera arrived. She then went inside to buy 7 grams of methamphetamine. Herrera gave her a black bag that contained nearly 10 grams of methamphetamine and a scale. Garza left the apartment, was picked up by law enforcement, and gave them the bag containing the drugs. The video recording of this encounter shows Herrera talking with Garza, telling her "I trust you now," and handing her a black bag. Garza stated that she did not look in the bag before handing it to the officers when she was picked up.

A similar event occurred on August 23, 2021. Garza was picked up by law enforcement, dropped off near Herrera's house, and went to her apartment. After being let into the apartment, Garza bought another 7 grams of methamphetamine and left. She was then picked up by law enforcement and turned over the drugs.

Howton is a patrol officer with the Scottsbluff Police Department. In this role he works with the "WING" task force that investigates narcotics and other violent crimes. He described how Garza worked with them by doing controlled buys. He stated that before he sent cooperating individuals to do controlled buys, he gave them money, searched them to make sure they did not have any narcotics, gave them a recording device and a GPS tracker, and then took them to a location near the target's home.

Howton testified that he followed this procedure before sending Garza to do the controlled buy on August 2, 2021. He described dropping her off near Herrera's apartment and tracking her via the GPS and audio recording. With these devices, he observed her meet with Herrera and enter her apartment. Once Garza left the apartment, he picked her up and she gave him a zippered pouch that contained a scale and a methamphetamine-like substance. His description of the August 23 controlled buy was similar. He dropped Garza off near Herrera's apartment, tracked her movement with the GPS and audio recording, and observed that she met up with another female. He then picked her up and she gave him a Ziploc baggie containing a crystalline substance.

Hunter works for the Nebraska State Patrol and helped Howton during the August 2, 2021, controlled buy. He provided more testimony about how Garza was searched before being sent to Herrera's apartment. He stated that they flipped her pockets inside out and checked her waistband, socks, shoes, and bra area. They also had her lift her bra up a little and lean forward to see if

anything fell out. After conducting this search, they did not find any narcotics on Garza before the controlled buy.

McBride works for the Gering Police Department and assisted Howton during the August 23, 2021, controlled buy. He stated they searched Garza on that occasion the same way she was searched on August 2.

Macomber used to work for the Nebraska State Patrol Crime Laboratory. She conducted the tests on the substances purchased during the controlled buys. She explained how she tested the substances Garza retrieved and that they tested positive for methamphetamine. She indicated that the methamphetamine from the August 2, 2021, controlled buy weighed 9.89 grams and the methamphetamine from the August 23 controlled buy weighed 6.81 grams.

Herrera generally denied all of the accusations against her. Although she said Garza came to her apartment on August 2 and 23, 2021, she claimed that she did not sell her any methamphetamine on either occasion. For the August 2 incident Herrera claimed that Garza came over to pick up an "EBT card" from their mutual friend. An Electronic Benefits Transfer (EBT) card is a plastic card similar to a debit card. Clients of the Supplemental Nutrition Assistance Program (SNAP), formerly the Food Stamp Program, use their EBT card to buy food at authorized stores. Herrera said that she gave Garza a black bag to carry her things in, but that it was a different bag than the one shown at trial containing methamphetamine and a scale. For the August 23 incident, Herrera stated that Garza came to her apartment to meet with their mutual friend. She claims that Garza came in, asked if she needed anything from Walmart, and then left. Again, Herrera denied selling Garza any drugs.

After deliberation, the jury returned guilty verdicts on both counts. On September 6, 2024, Herrera was sentenced to 3 years' probation on each count to run concurrently and required to do a 90-day jail sentence as a term of her probation.

Herrera now appeals with different counsel.

## III. ASSIGNMENTS OF ERROR

Restated, Herrera assigns that (1) the evidence was insufficient to convict her of the charges; (2) the jury erred in finding her guilty of the charges; (3) the district court erred in accepting the jury's guilty verdict; and (4) she was denied the effective assistance of counsel because her trial counsel failed to (a) motion to sequester the witnesses; (b) object to evidence in a timely manner; (c) introduce evidence at trial that would have benefited her case; and (d) provide an effective and zealous defense.

## IV. STANDARD OF REVIEW

The relevant question for an appellate court in reviewing a criminal conviction for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787.

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the

undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Across her first three assigned errors, Herrera challenges the sufficiency of the evidence used to convict her of distributing methamphetamine. Because these assignments essentially assign the same error, we address them together. Herrera essentially asserts that because she denied selling Garza methamphetamine and provided an alternative story, that no reasonable fact finder could have convicted her of the charges.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. *State v. Rush, supra*.

We determine there was sufficient evidence for the jury to find Herrera guilty of two counts of distributing methamphetamine beyond a reasonable doubt. The evidence demonstrated that on August 2 and 23, 2021, Garza did not have methamphetamine on her prior to the controlled buys and then emerged with multiple grams of methamphetamine after interacting with Herrera. These facts alone, when viewed in the light most favorable to the prosecution, are enough for a rational trier of fact to determine that Herrera was guilty of distributing methamphetamine on both occasions.

But beyond this, Herrera's contrasting account makes little sense. To believe her claim that she did not sell Garza methamphetamine, someone needed to give Garza the methamphetamine at some point before she was picked up by law enforcement or after she left Herrera's apartment. Both are unlikely given that Garza was thoroughly searched prior to the controlled buys, tracked via GPS and audio recording before, during, and after the buys, and only interacted with Herrera before returning to law enforcement. This constant surveillance of Garza leaves a near impossibility that she obtained the methamphetamine from someone other than Herrera. Because the evidence was sufficient to show that Herrera distributed methamphetamine to Garza on both occasions, we determine this assignment of error fails.

### 2. COMPULSION TO TESTIFY

Herrera next asserts in the argument section of her appellate brief that she was compelled to testify by her trial counsel although she expressed opposition to doing so. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting error to be considered by the appellate court. *Evert v. Srb*, 33 Neb. App. 244, 13 N.W.3d 728 (2024), review denied (Jan. 14, 2025). We do not address this argument because Herrera failed to raise the issue in the assignments of error section of her appellate brief.

### 3. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Herrera next assigns her trial counsel was ineffective because he failed to (a) motion for the sequestration of the witnesses; (b) object to evidence in a timely manner; (c) introduce evidence

at trial that would have been beneficial to her case; and (d) provide an effective and zealous defense.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Clark,* 315 Neb. 736, 1 N.W.3d 487 (2024). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question under the standard of review previously noted. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Clark, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

(a) Failure to Sequester Witnesses

Herrera first assigns her trial counsel was ineffective because he failed to motion to sequester the State's witnesses. She asserts that if the witnesses were sequestered, Garza would have been unable to testify to certain information. Relevant to this argument is the following colloquy that occurred during Garza's testimony:

> Q. Do you recall any of the cases that you worked where you made controlled buys which ended up being dismissed?
> A. No.
> Q. And as we're . . . sitting here, . . . Investigator Howton was working with you when you were working for WING, right?
> A. Yes, sir.
> Q. And he put together a list of just some of the cases he remembers off the top of his head. I'm going to ask you about some of these folks. . . .

The State then asked Garza about individuals on that list. Herrera asserts that if the witnesses were sequestered, Howton would not have been able to make that list during Garza's testimony and Garza would not have been asked about it.

We determine the record is sufficient to determine that Herrera will not be able to establish that Howton being in the courtroom during Garza's testimony prejudiced her. Neb. Rev. Stat. § 27-615 (Reissue 2016) provides that "[a]t the request of a party the judge shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and he [or she] may make the

order on his [or her] own motion." But that "does not authorize exclusion" of "an officer or employee of a party which is not a natural person designated as its representative by its attorney." See § 27-615(2). See generally *State v. Freeman*, 267 Neb. 737, 677 N.W.2d 164 (2004). While Herrera's trial counsel could have moved to sequester Howton, nothing would have precluded the State from filing a notice to designate him as its representative to invoke § 27-615(2). And as the State argues, it would have done so because he was the only law enforcement official involved in both controlled buys. Therefore, even if the witnesses were sequestered, the State could have designated Howton as its representative and the only appropriate ruling would have been that Howton fell outside the limits of any sequestration order the district court may have granted. Therefore, even if her trial counsel successfully argued for sequestration, the result would not have been different. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017).

### (b) Failure to Object to Evidence

Herrera next assigns her trial counsel was ineffective because he failed to object to evidence in a timely manner. She essentially argues her trial counsel should have objected more often throughout the trial. More so, she broadly asserts that if he objected to the chain of custody, the court might have ruled in her favor. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). We determine this assignment lacks the required specificity. Herrera does not direct us to specific objections that should have been made nor does she provide any legal citations as to why those objections may have prevailed. Without these factual or legal citations, we determine this assignment of error fails.

### (c) Failure to Introduce Beneficial Evidence

Herrera next assigns her trial counsel was ineffective because he failed to introduce evidence at trial that would have been beneficial to her case. She asserts her trial counsel failed to depose witnesses, complete a proper investigation, call any character witnesses that could have bolstered her credibility, and call any witnesses that may have interacted with Garza while she waited outside of the apartment. When a claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787. Appellate counsel must give on direct appeal at least the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. *Id.* Such specificity is necessary so that a postconviction court may later identify whether a particular claim of failing to investigate a witness is the same one that was raised on direct appeal. *Id.* Because Herrera fails to identify any particular witnesses that should have been deposed or called to testify, we determine this assignment of error lacks the required specificity and must fail.

### (d) Failure to Provide Effective and Zealous Defense

Herrera lastly assigns her trial counsel was ineffective because he failed to provide an effective and zealous defense. Specifically, she argues her trial counsel should have cross-examined Macomber and moved for a directed verdict after the State rested. The Nebraska Supreme Court previously ruled that a defendant's assertion that their trial counsel failed to zealously advocate for them, without more, was insufficiently specific to demonstrate deficient performance. See *State v. Turner*, 315 Neb. 661, 998 N.W.2d 783 (2024). We first determine this assignment fails because Herrera fails to specifically allege what questions her trial counsel should have asked Macomber that could have changed the outcome of the case. We next determine the record is sufficient for us to decide that she will be unable to show she was prejudiced by her trial counsel not moving for a directed verdict. Given our prior determination that the State's evidence was sufficient to convict her of the charges, even if her trial counsel moved for a directed verdict, it would not have changed the outcome of the case.

## VI. CONCLUSION

We determine there was sufficient evidence to convict Herrera of two counts of distributing methamphetamine. We do not address her argument concerning being compelled to testify because she failed to assign it as error. We next determine the record was sufficient to decide that Herrera will be unable to demonstrate that her trial counsel's failure to sequester the witnesses prejudiced her. We also determine that her remaining claims of ineffective assistance of trial counsel lacked the requisite specificity because she failed to identify objections he should have made, witnesses he should have called, and questions he should have asked Macomber. And to the extent that she alleges her trial counsel was ineffective for failing to move for a directed verdict, we determine the record was sufficient to decide that she will be unable to show she was prejudiced because the State presented sufficient evidence to convict her of the charges.

AFFIRMED.